IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff-Respondent, | §<br>§<br>§ | |
| v. | § | Cr. No. C-09-833 |
| | § | (C.A. No. C-10-134) |
| PEDRO FLORES-QUIRINO,<br>    Defendant-Movant. | §<br>§<br>§ | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION
TO REDUCE SENTENCE PURSUANT TO 28 U.S.C. § 2255
AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

On May 10, 2010, the Clerk's office received a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C.§ 2255 from Defendant Pedro Flores-Quirino. D.E. 25.[1] The government has filed a response and alternatively a motion to dismiss. D.E. 35, 36. Flores Quirino has filed Objections to the government's response. D.E. 37. The government, as part of its response, has moved to supplement the record with trial counsel's affidavit. The government's motion (D.E. 35) is GRANTED.

The Court DENIES Flores-Quirino's motion (D.E. 25) because the claims raised do not entitle him to relief. Additionally, the Court DENIES Flores-Quirino a Certificate of Appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1] Docket entry references are to the criminal case.

## II. BACKGROUND

### A. Criminal Offense

Flores-Quirino was stopped for a traffic violation in San Patricio County. During the stop, the detaining officer called the Border Patrol to assist based upon his suspicion that Flores-Quirino was in the United States illegally. Border Patrol agents determined that Flores-Quirino was present in the United States without permission and arrested him for illegal reentry. D.E. 1.

### B. Criminal Proceedings

Flores-Quirino was indicted for illegal reentry in September 2009. D.E. 9. He was appointed counsel after his arrest and before indictment. D.E. 7. Flores-Quirino entered into a Plea Agreement with the government and was rearraigned In late October 2009. D.E. 12, 13, 32. During rearraignment, Flores-Quirino confirmed that his attorney had read the indictment to him in Spanish, had met with him, was able to communicate with him, and he had enough time with him to go over the choices available to him. Id. at 5, 7. The Court was aware that Flores-Quirino was a citizen of Mexico. Id. at 4. The Court advised Flores-Quirino of the maximum punishment of ten years for illegal reentry if he had been convicted of previous crimes. Id. at 11-12.

Flores-Quirino confirmed that the Plea Agreement was his and he had discussed it with his attorney before signing it. Id. at 13-14. Flores-Quirino admitted to the Court that he

had been deported in 2007 and found in the United States without permission in 2009. Id. at 17. He pleaded guilty to the sole count of the indictment against him, which charged him with illegal reentry after deportation, in violation of 8 U.S.C. §§ 1326(a) and 1326(b). D.E. 12, 13, 32.

The Probation Department prepared a PSR. Flores-Quirino filed no objections. The base offense calculation for illegal reentry is 8, but 16 points were added because Flores-Quirino had been convicted of alien smuggling in 2005, which resulted in his 2007 deportation. D.E. 17 at ¶¶ 10-11. He was given credit for acceptance of responsibility for a total offense level of 21.

Flores-Quirino's criminal history points were calculated to be 7 resulting in application of Category of IV. The previous felony conviction in 2005 for alien smuggling added 3 points towards his criminal history. A previous misdemeanor attempted assault charge in 2002 added another point. Flores-Quirino was sentenced to 37 months imprisonment on the 2005 alien smuggling charge with 3 years supervised release. His current reentry occurred while he was on supervised release adding another 2 points to his criminal history along with 2 additional points because the current offense occurred within two years of his release from the Bureau of Prisons. The Guidelines range of imprisonment was 57-71 months. Id. at ¶ 40.

Flores-Quirino was sentenced by this Court to 37 months in the custody of the Bureau of Prisons, to be followed by a three-year term of supervised release. D.E. 22, 23. The Court

also imposed a $100 special assessment. D.E. 23. Judgment was entered January 14, 2010. Flores-Quirino did not appeal, but timely filed his § 2255 motion.

### III. MOVANT'S ALLEGATIONS

Flores-Quirino argues that his counsel was ineffective at sentencing in multiple respects: 1) for failing to argue that his prior conviction for alien smuggling should not have been used to enhance his base offense level, 2) by failing to argue that his status as a deportable alien resulted in imposition of a harsher sentence and failing to urge this as a basis for downward departure, and 3) for failing to object that his criminal history was overrepresented by the Guideline calculation.

### IV. ANALYSIS

#### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

B.  **Ineffective Assistance of Counsel**

A Sixth Amendment claim of ineffective assistance of counsel is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

To establish prejudice as a result of an alleged error at sentencing, a § 2255 movant must show that there is a reasonable probability that, but for counsel's alleged error, the sentencing would have been different. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000). This requires him to show a reasonable probability that he would have received a lesser sentence. United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004).

If the movant fails to prove of the two one prongs, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## C. Alleged Ineffectiveness of Counsel at Sentencing

Flores-Quirino claims that his counsel was ineffective at sentencing for failing to seek a downward departure from the Sentencing Guidelines on his behalf. Counsel did not object to the calculation of the Sentencing Guidelines and agreed they were correctly calculated, but counsel also argued convincingly to the Court that Flores-Quirino's criminal history was over represented in the calculation, that Flores-Quirino had no real criminal record other than his illegal entry into the United States, and that his prior conviction for alien smuggling overstated his crime. D.E. 33 at 3-5.[2]

---

[2] MR. REYNA: Thank you, Your Honor. Judge, this is an
6 extraordinarily tough case. You know, my client basically has
7 been hit with every enhancement, for committing the instant
8 offense while being on supervised release. And regrettably,
9 while I believe that the guidelines have been properly set
10 forth for the Court's consideration, I would respectfully
11 suggest that it over-represents the seriousness of this instant
12 offense and fails to take into some mitigating factors of
13 Mr. Flores.
  \*   \*   \*   \*
19 His criminal history, as set forth before the Court,
20 he has obviously committed an offense before of alien
21 smuggling, and your honorable colleague across the hall
22 sentenced him to 37 months back in 2005.
  \*   \*   \*   \*
3 When I look at his prior criminal history, other than
4 what took place in 2005, Your Honor, there's not a whole lot
5 there. There's an assault in 2002, one day confinement. You
6 know, from my gathering of the facts and discussing with
7 Mr. Flores, it seemed just to be a mutual combat type of a
8 fight.
  \*   \*   \*   \*
16 But now the problem is, regardless of which sentence
17 this Honorable Court hands down, the detrimental effect it has
18 on him not having a relationship with his children. And he

The Court recognized that the Guideline calculation overstated Flores-Quirino's criminal history and that in his alien smuggling conviction, Flores-Quirino was driving the car to avoid paying a fee to the person who arranged for him and the others to come into the United States. Id. at 6-7. After considering that Flores-Quirino's criminal history was overstated, the Court reduced the criminal history Category to II, thereby reducing the Guidelines to 41-51 months, and then downwardly departed by sentencing Flores-Quirino to 37 months. Id. at 7-10.

Thereafter, the Court heard the motion to revoke Flores-Quirino's supervised release, to which Flores-Quirino pled true. The Court sentenced him to four months imprisonment to run consecutive to the illegal reentry sentence. Id. at 13-17.

As to Flores-Quirino's first and third claims of ineffective assitance, Flores-Quirino is factually mistaken. Counsel successfully argued for a downward departure that resulted in a sentence of 37 months, 20 months below the original Guideline calculation. Claims one and three of ineffective assistance are without merit.

---

19 came here to work, Judge. He wasn't caught with firearms, or
20 he was not engaged in the drug trade. He came here to work, as
21 many of them do. It doesn't make it right. It's absolutely
22 wrong. And he stands respectfully and humbly before you.
23 I don't think the Court could give him less than what
24 your honorable colleague gave him three or four years ago. I
25 would respectfully suggest that an imposition of a sentence of
1 43 months would accomplish the factors set forth in Section
2 3553.
Id.

Claim two complains that counsel was ineffective for failing to urge the Court to downwardly depart on the grounds that Flores-Quirino's status as a deportable alien results in his ineligibility for lower security confinement by the Bureau of Prisons, that he will face deportation upon release, that he will be detained beyond his sentence. D.E. 25 at 5. This ground is also without merit.

Even if counsel had requested the Court consider these factors, counsel would not have been successful. The Sentencing Guidelines provide that a downward departure on the basis that the defendant is a deportable alien, while permissible, is proper only in the extraordinary case, and such cases are considered "highly infrequent." See United States v. Garay, 235 F.3d 230, 232-33 & n.8 (5th Cir. 2000); see also United States v. Nnanno, 7 F.3d 420, 422 (5th Cir. 1993) (a bank robbery case in which the court held that "[c]ollateral consequences, such as the likelihood of deportation or ineligibility for more lenient conditions of imprisonment, that an alien may incur following a federal conviction are not a basis for downward departure.").

Moreover, in an immigration offense, a defendant's alienage has been adequately taken into consideration and thus is not a permissible basis for downward departure. Garay, 235 F.3d at 233-34 (defendant's "status as deportable alien, as an inherent element of his crime, has already been considered by the [Sentencing] Commission in formulating the applicable guidelines"); United States v. Foote, 2001 WL 671465, *3-*4 (N.D. Tex. 2001) (rejecting argument by § 2255 movant that his counsel should have moved for downward

departure); cf. United States v. Maldonado, 242 F.3d 1, 4-5 (1st Cir. 2001) ("a deportable alien who commits a crime is still within the 'heartland' of the guidelines"; "the common facts of a long sentence and likely deportation" do not by themselves make a case extraordinary such as to warrant a downward departure). While the cases cited in the preceding paragraph were all decided before Booker,[3] when the Sentencing Guidelines were mandatory, the same principles hold true under the advisory guidelines. That is, the Court was aware of Flores-Quirino's deportation status, what that meant in terms of the BOP's policies and restrictions, and the fact that Flores-Quirino is an illegal alien and subject to deportation is a fact already taken into account by the advisory sentencing guidelines for his offense. Thus, the Court would not have reduced his sentence had counsel raised an objection on this ground at sentencing. Because Flores-Quirino has not shown a "reasonable probability" that he would have received a lesser sentence had counsel made that argument, he cannot establish prejudice. See Grammas, 376 F.3d at 438-39. Accordingly, Flores-Quirino's second ineffective assistance of counsel claim also fails.

### D.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Flores-Quirino has not yet filed a notice of appeal, the § 2255 Rules instruct that this Court "must issue or deny a certificate of appealability when

---

[3] United States v. Booker, 543 U.S. 220 (2005).

it enters a final order adverse to the applicant." Rule 11, § 2255 Rules. The Court thus turns to whether Flores-Quirino is entitled to a COA.

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Flores-Quirino is not entitled to a COA as to any of his claims. That is, reasonable jurists could not debate the Court's

resolution of his ineffective assistance claims, nor do those issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## V. CONCLUSION

For the foregoing reasons, Flores-Quirino's motion to vacate pursuant to 28 U.S.C. § 2255 (D.E. 25) is DENIED. He is also denied a Certificate of Appealability.

It is so ORDERED this __7__th day of __March__, 2011.

_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE